Pittsburgh *v*. Insurance Commissioner, et al.
and Blue Cross of Western Pennsylvania,
Intervenor.
Allegheny County *v*. Insurance Commissioner
and Blue Cross of Western Pennsylvania,
Intervenor.

Argued December 8, 1970, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS. President Judge BOWMAN disqualified himself.

*Marion K. Finkelhor,* Assistant City Solicitor, with him *Ralph Lynch,* City Solicitor, for appellant, City of Pittsburgh.

*Maurice Louik,* County Solicitor, with him *Thomas M. Rutter, Jr.,* Assistant County Solicitor, for appellant, County of Allegheny.

*Robert A. Miller,* Assistant Attorney General, with him *Frederic G. Antoun,* Deputy Attorney General, and *Fred Speaker,* Attorney General, for appellees.

*Edward L. Springer,* with him *Ruffin, Perry, Springer & Hazlett,* for intervenor.

264

OPINION BY JUDGE MANDERINO, December 31, 1971: This case involves an appeal by the City of Pittsburgh (City) and the County of Allegheny (County) from a decision of George F. Reed, the Insurance Commissioner of Pennsylvania, approving a rate increase requested by Blue Cross of Western Pennsylvania (Blue Cross). On April 3, 1969, Blue Cross filed with the Insurance Department a request for a rate increase for its subscribers in twenty-nine counties in western Pennsylvania, including residents of the City of Pittsburgh and Allegheny County. The requested increase was publicly announced, as was the fact that the Insurance Commissioner would hold a public hearing in Pittsburgh to afford the public an opportunity to present any relevant information concerning the increase which had been submitted to the Insurance Department. When the hearing was convened on May 28, 1969, representatives from both the City and County were permitted to make statements. However, the Insurance Commissioner explicitly refused to allow anyone, except members of the Insurance Department, to cross-examine any representative of Blue Cross. Both the City and County objected to this procedure as being violative of due process procedures required by the Administrative Agency Law, but they were overruled by the Commissioner. The hearing was concluded on June 10, 1969, and on July 13, 1970, the Insurance Commissioner approved Blue Cross' request for a rate increase. The City and County appealed from the decision of the Commissioner approving the rate increase. Blue Cross of Western Pennsylvania participated as intervenor. This appeal was subsequently transferred to the Commonwealth Court pursuant to the Commonwealth Court Act (Act No. 185 of January 6, 1970 (1969) P. L.     , 17 P.S. 211-1 et seq.).

The City and County have taken this appeal under the Administrative Agency Law (Act of June 4, 1945,

as amended, P. L. 1388, 71 P.S. 1710.1 et seq.). Section 41 (71 P.S. 1710.41) of the law provides for an appeal from an *adjudication* of an administrative agency.

The City and County specifically challenge the failure of the Commissioner to allow the City and County to cross-examine witnesses, arguing that an adjudication by the Commissioners without having given a party the right to cross-examine is error.

Blue Cross' position is that the approval of the rate increase was not an *adjudication* within the terms of the Administrative Agency Law and that therefore the procedural requirements of that law were not applicable to the hearings on the rate increase.

The central question is whether or not a decision by the Insurance Commissioner approving a rate increase by Blue Cross of Pennsylvania is an *adjudication* within the meaning of the Administrative Agency Law. If it is such an *adjudication* then the Commissioner was bound to give any party the right to cross-examine at the hearing.

First, there is no question that generally the Department of Insurance is covered by the Administrative Agency Law. That law specifically enumerates the agencies which are covered by the Administrative Agency Law and one of the listed agencies is the Insurance Department. (Section 51, 71 P.S. 1710.51).

Under the Administrative Agency Law an *adjudication* is defined as: ". . . any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities or obligations of any and all of the parties to the proceeding in which the adjudication is made, but shall not mean any final order, decree, decision, determination or ruling based upon a proceeding before a court, or which involves the seizure or forfeiture of property, or which involves paroles or pardons or releases from mental institutions." (71 P.S. 1710.2(a)).

Blue Cross contends that the Insurance Department's approval of a specific rate increase for a specific company is essentially a legislative function delegated by the executive branch and not subject to judicial review, rather than an adjudicative function.

The Administrative Agency Law defines not only *adjudication,* but also defines a *regulation.* The definition of *regulation* in the Administrative Agency Law reads: "regulation means any rule, regulation or order in the nature of a rule or regulation, of general application and future effect, promulgated by an agency under the statutory authority in the administration of any statute administered by or relating to the agency. . . ."

It is true, as the Commissioner contends, that administrative agencies sometimes are acting in what has been called a quasi-legislative fashion and sometimes an agency is acting in a quasi-judicial fashion. It has often been said that adjudication resembles what courts do in deciding cases and that rule making resembles what legislators do in enacting statutes. 1 Davis, *Administrative Law Treatise* §5.01 at p. 287.

It is not easy to arrive at a precise definition of what constitutes the judicial function and what constitutes the legislative function. However, certain differences do exist between the two functions. When a governmental body is exercising a legislative function, it manifests a general purpose and its final result. Thus, the Legislature enacts a law and we do not speak of the "record" as being necessary to substantiate the decisions made in the legislative enactment. A judicial decision, however, makes no sense if there is not a "record" to give foundation to the judicial decision.

In the Administrative Agency Law, two decision making functions of an agency are defined. That law speaks of *adjudication* by the agency and also speaks

of *regulation* by the agency. Both functions involve decision making which can seriously affect rights.

The definition of *adjudication* is very broad, as is the definition for regulation. If we attempt to find a distinction between them, we must look to the proceeding before the Commissioner in this case. It was not a proceeding to determine a rule or regulation involving rate increases of *general application* throughout the Commonwealth. It was a proceeding to determine specifically whether an individual non-profit corporation would be entitled in a specific geographic area to a specific rate increase. This has all the earmarks of a judicial function, not a legislative function. Indeed, we might test this by considering whether or not the Legislature itself could by legislative enactment pass legislation specifically referring to Blue Cross of Western Pennsylvania and stating in the legislation that a specific corporation was entitled to charge a specific rate to subscribers. There can be no question that such legislation would be special legislation which is prohibited by the Constitution. *See Constitution of Pennsylvania,* Art. 3, §32. We do not think that an administrative agency can, under the guise of designating a decision as legislative, do something that the Legislature itself could not do. The Legislature can, of course, through legislative enactment, adopt "regulations," which is what the Legislature does all the time except that we call them laws. The distinguishing characteristics of our law is quite similar to the definition given to regulation in the Administrative Agency Law. It is an enactment of general application, not an enactment of specific application. Even those laws which appear to be enactments of specific application must be laws of specific application to a reasonable class in the society. Only then can legislation applying to a specific class be valid. We note that special legislation in Pennsylvania relating to single particular municipal corpora-

tions occurs by specific constitutional provisions. *See Constitution of Pennsylvania*, Art. 3, §20.

On the other hand, the judicial function in our government is the function where rights are determined which affect specific persons or specific classes of persons which classes may not be valid classes for legislating but are always valid classes for judicial determinations. Thus a judicial function can be performed as to any individual or any class.

The definition of *adjudication* in the Administrative Agency Law speaks of decision making which affects ". . . the parties to the proceeding." This language is peculiar to judicial proceedings, not legislative proceedings.

The real difference between the definition of *adjudication* and the definition of *regulation* in the Administrative Agency Law will not be found by addressing ourselves to questions of *what* is affected or how seriously something is affected, but rather by addressing ourselves to "who" is affected. The definition of adjudication refers to "parties." The definition of "regulation" refers to rules or regulations of "general application."

We cannot call the decision making involved in this proceeding a legislative function when it affects specific parties, namely, Blue Cross of Western Pennsylvania, a corporation under the laws of Pennsylvania, and people who are subscribers to the insurance sold by Blue Cross of Western Pennsylvania.

Blue Cross has argued that it is the only "party" that can appeal from the Commissioner's decision making on a rate increase and that subscribers or their representatives have no standing as "parties." One of the reasons given is that subscribers can cancel if they wish. This ignores the obvious protection which the law gave to subscribers by not allowing a unilateral rate increase. If we look to the Administrative Agency Law the term "party" to a proceeding is defined as

". . . any person who appears in a proceeding before an agency who has a direct interest in the subject matter of such proceeding." It cannot be said that the exact persons whom the law intended to protect by requiring governmental approval of rate increases do not have a direct interest in the subject matter of such proceedings.

Blue Cross also challenges the right of the City of Pittsburgh and the County of Allegheny to appear as "parties." Representatives of classes have always been recognized in the law and we can conceive of no better representatives of a particular geographic area than officials of government—government being that element of our society specifically obligated to perform in areas better handled collectively than individually. *See Pittsburgh et al. v. Milk Marketing Board*, 1 Pa. Commonwealth Ct. 300, 275 A. 2d 115 (1971).

We also point out that the City of Pittsburgh is a subscriber to Blue Cross paying premiums prior to the rate increase of over $1 million a year for its over five thousand employees. If the words "direct interest in the subject matter of such proceeding" have any meaning they must be held to apply to the City of Pittsburgh which is directly affected by any rate increase given to Blue Cross of Pennsylvania and which will cause substantial increases in the premium payment of the City of Pittsburgh.

The Commissioner has also argued that to define a subscriber of Blue Cross as a party to the proceeding is to open up the door to a situation whereby thousands of people would be entitled to be represented at such a proceeding. In theory the Commissioner may be correct. In practice we do not think such concerns are valid. But even if they are, the situation is not any different from other judicial determinations that sometimes affect thousands of people. Tribunals have been able to work out reasonable controls and manners of

regulation and chaos has not resulted. We note for instance that any legislative enactment by the General Assembly could be challenged by thousands of people and under well-settled rules of law each of these thousands would be entitled to so challenge a legislative enactment. This has not been reason to change the law and deny an individual the right to challenge. The practicalities of life are such that although many may have the rights, usually representatives of the group carry the standard. A recent example would be the income tax challenge in Pennsylvania. Literally millions had standing before the law to challenge but only a few exercised the right in court. We certainly would not say that the few were not entitled to these rights because the door would be open to the millions. *See Pittsburgh et al. v. Milk Marketing Board,* 1 Pa. Commonwealth Ct. 300, 275 A. 2d 115 (1971).

The City and County have properly filed this appeal under Section 41 (71 P.S. 1710.41) of the Administrative Agency Law and we must therefore deny the motion to quash this appeal.

We note that under the Constitution of Pennsylvania (Art. 5, §9) decision making by an administrative agency may be subject to judicial challenge regardless of what the decision making process is called. Decision making of a legislative character may, however, be entitled to certain presumptions which decision making of a judicial character is not, just as decisions by legislative bodies are treated differently from decisions by judicial bodies. There is no need to consider these matters which are not before us in this proceeding.

The hearing conducted by the Insurance Department did not comply with the procedural requirements for an adjudicative proceeding under the Administrative Agency Law. Among other requirements parties are entitled to the right of cross-examination. (71 P.S.

1710.32). There is no dispute by the parties on this appeal that this procedural requirement was not followed.

We recognize that the Insurance Department and other administrative agencies exist to protect the public interest and in fact do so on many occasions. We do not understand, however, why this guardian role must be jealously coveted as the exclusive domain of the administrative agency. The administrative agency, considering its multiple responsibilities frequently prosecutor, judge and jury, should welcome rather than fear a proceeding in which opposing viewpoints are openly aired.

In 1937, while discussing the rate making function of a public utility commission, the United States Supreme Court said: "Regulatory commissions have been invested with broad powers within the sphere of duty assigned to them by law. Even in quasi-judicial proceedings their informed and expert judgment exacts and receives a proper deference from courts when it has been reached with due submission to constitutional restraints. . . . Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the 'inexorable safeguard' of a fair and open hearing be maintained in its integrity. . . . The right to such a hearing is one of 'the rudiments of fair play' . . . assured to every litigant by the Fourteenth Amendment as a minimal requirement. . . . There can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of harassing delay, when that minimal requirement has been neglected or ignored." *Ohio Bell Telephone Company v. Public Utilities Commission,* 301 U.S. 292 (1937).

We think this same philosophy expresses the intent of the Administrative Agency Law of Pennsylvania

which requires certain due process procedures in adjudications by administrative agencies—in this case the Insurance Department of Pennsylvania.

On July 13, 1970, the Insurance Commissioner issued the decision approving the rate increase requested by Blue Cross of Western Pennsylvania (filing No. 5-HSA-1966 of April 3, 1969, updated March 13, 1970). Since there is no supersedeas in this proceeding, the Commissioner's decision shall remain in effect pending a rehearing consistent with this opinion and the Administrative Agency Law.

## ORDER

Now, December 31, 1971, implementing the decision of the Court in the above case, it is directed that the record be remanded to the Insurance Commissioner for proceeding consistent with the opinion of the Court.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. I do not share the view of the majority that the hearing conducted by the Insurance Commissioner was subject to our traditional due process rights applicable to an adversary proceeding. Therefore, I do not conclude that it was error for the Insurance Commissioner to restrict cross-examination of representatives of Blue Cross of Western Pennsylvania to cross-examination by members of the Insurance Department only.

Further, I am not satisfied that the City of Pittsburgh and the County of Allegheny have standing to appeal from the decision of the Insurance Commissioner approving the rate increase. See *Louden Hill Farm, Inc. v. Milk Control Commission*, 420 Pa. 548, 217 A. 2d 735 (1966); *Lansdowne Borough Board of Adjustment's apeal*, 313 Pa. 523, 170 A. 867 (1934); *Elliott Estate*, 388 Pa. 321, 131 A. 2d 357 (1957).