Newport Homes, Inc., Appellant, *v.* Jacob Kassab, Secretary, Department of Transportation, Commonwealth of Pennsylvania, Appellee.

Astro Manufacturing Co., Inc., Appellant, *v.* Jacob Kassab, Secretary, Department of Transportation, Commonwealth of Pennsylvania, Appellee.

Standard Coach Company, Inc., Appellant, *v.* Jacob Kassab, Secretary, Department of Transportation, Commonwealth of Pennsylvania, Appellee.

Burlington Homes, Inc., Appellant, *v.* Jacob Kassab, Secretary, Department of Transportation, Commonwealth of Pennsylvania, Appellee.

Poloron Homes of Pennsylvania, Inc., Appellant, *v.* Jacob Kassab, Secretary, Department of Transportation, Commonwealth of Pennsylvania, Appellee.

Herrli Industries, Inc., Appellant, *v.* Jacob Kassab, Secretary, Department of Transportation, Commonwealth of Pennsylvania, Appellee.

Redman Mobile Homes, Appellant, *v.* Jacob Kassab, Secretary, Department of Transportation, Commonwealth of Pennsylvania, Appellee.

Jacob Kassab, Secretary, Department of Transportation, Commonwealth of Pennsylvania, Appellee, *v.* Liberty Homes, Inc., Appellant.

Argued November 7, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., MENCER, ROGERS and BLATT. Judges KRAMER and WILKINSON, JR. did not participate.

*Arthur R. Littleton,* with him *R. Bruce Whitney* and *Morgan, Lewis & Brockius,* for appellants.

*Stuart J. Moskovitz,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., February 6, 1975:

Consolidated for argument and disposition are the appeals of Appellants, eight Pennsylvania-based manufacturers of modular and mobile homes, from the denial by the Pennsylvania Department of Transportation (Penndot) of their applications for special hauling permits for the primary movement[1] of fourteen feet wide mobile homes and requests for hearings thereon.

The applications were rejected pursuant to a "final directive," issued by Penndot on January 3, 1974, which limited the issuance of special "oversize" permits for fourteen feet wide units to those in production by January 31, 1974, and in transit by February 28, 1974. This directive effectively ended an experimental period conducted by Penndot throughout the Fall of 1973 during which special hauling permits for fourteen feet wide mobile home and modular units were routinely issued. On February 14, 1974, Newport Homes, Inc., Burlington Homes, Inc. and Poloran Homes of Pennsylvania, Inc. (Appellants herein) filed a complaint in the United States District Court for the Middle District of Pennsylvania to enjoin then Secretary of Penndot, Jacob Kassab, from discontinuing this policy of issuing fourteen feet wide special permits. A preliminary injunction was denied by the District Court on March 20, 1974. *Newport Homes v. Kassab,* Civil No. 74-944 (M.D. Pa., filed March 20, 1974). Thereafter, Appellants filed applications in the appropriate district offices of Penndot for special hauling permits for the movement of fourteen feet wide units for which Appellants had received pur-

---

1. A "primary movement" is the "movement of a house trailer, mobile home or office trailer from the place of manufacture . . . to its destination, either by or for the manufacturers or the purchaser. . . ." Reg. 802(b) of Regulation 800 adopted by Penndot November 24, 1970, and published December 12, 1970, 1 Pa. B. 651-654.

chase orders. Penndot rejected[2] each application and request for hearing thereon because the applications failed to comply with the width limitations of its "final directive."

The instant appeals to this Court followed.

Appellants contend that the "final directive," implemented internally by Penndot, violates and *sub silentio* alters the provisions of Regulation 800 of the Department of Transportation, and, as applied to them, violates their Fourteenth Amendment rights to Due Process and Equal Protection. Penndot has moved to quash the appeals on the ground that its actions in denying the permits did not constitute "adjudications" within the meaning of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended*, 71 P.S. §1710.1 et seq., or otherwise an act of a judicial nature from which an appeal will lie. Before reaching this question, however, we must briefly dispose of Appellants' contention that their right of appeal, guaranteed by Article V, Section 9 of the Pennsylvania Constitution of 1968,[3] was implemented by Section 403 (1) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 637, *as amended*, 17 P.S. §211.403 (1) (Supp. 1974-1975), irrespective of whether the administrative action appealed from is judicial or quasi-judicial in nature. This position we rejected in *Manheim Township School District v. State Board of Education*, 1 Pa. Commonwealth Ct. 627, 276

---

2. In the case of Burlington Homes, Inc., a special hauling permit was issued on April 23, 1974, but revoked the next day as the application had erroneously described the movement proposed as from a dealer's lot rather than a primary movement covered by the "final directive."

3. Providing: "There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such courts to be as provided by law; and there shall be such other rights of appeal as may be provided by law."

A. 2d 561 (1971). *Manheim* was recently reaffirmed in *LaCamera v. Board of Probation and Parole,* 13 Pa. Commonwealth Ct. 85, 317 A. 2d 925 (1974).

Although Section 403(1) of the Appellate Court Jurisdiction Act does not create an independent right of appeal, we must conclude that Appellants do have a right of appeal from the denial of special hauling permits under the Administrative Agency Law. As concerns appeals from administrative agencies which are not expressly provided for by substantive law, Article V, Section 9 has been implemented by Section 47 of the Administrative Agency Law, as added by the Act of December 2, 1968, P.L. 1135, 71 P.S. §1710.47 (Supp. 1974-1975). *Smethport Area School District v. Bowers,* 440 Pa 310, 269 A. 2d 712 (1970) ; *Commonwealth v. Kready,* 7 Pa. Commonwealth Ct. 448, 300 A. 2d 291 (1973). This section provides in pertinent part: "Where an Act of Assembly expressly provides that there shall be no appeal from an adjudication of an agency . . . or where the applicable acts of assembly are silent on the question of judicial review, any person aggrieved by such an adjudication, who has a direct interest in such adjudication may nevertheless appeal the same in the manner provided by section 41 through 44 of this act, [71 P.S. §§1710.41-.44 (Supp. 1974-1975)]. . . . Section 31 through 35 of this act [71 P.S. §§1710.31-.35 (Supp. 1974-1975)] shall apply to all proceedings leading to an adjudication of an agency which may be appealed under this section."

The Vehicle Code, Act of April 29, 1959, P.L. 58, *as amended,* 75 P.S. §901 et seq., under which Penndot purported to act in denying Appellants special hauling permits, is silent as to judicial review. Therefore, the instant administrative actions are reviewable[4] if they can

---

4. Penndot is an agency subject to the provisions of the Administrative Agency Law though not specifically enumerated in Section 51(a), 71 P.S. §1710.51(a) (Supp. 1974-1975).

be characteried as a matter of law as "adjudications." " 'Adjudication' means any final order, decree, decision, determination, or ruling by an agency affecting personal or property rights, privileges, immunities or obligations of any or all of the parties to the proceeding in which the adjudication is made . . . ." Section 2(a) of the Administrative Agency Law, 71 P.S. §1710.2(a) (Supp. 1974-1975). The denial of special hauling permits, as opposed to the promulgation of the "final directive" here attacked, is clearly a final decision of an agency which affect Appellants' privilege to transport mobile homes with widths in excess of fourteen feet. That the decision was communicated in the form of "a letter, rather than a formal adjudication, if of no particular significance, for, as this Court has noted previously, a letter can under certain circumstances, constitute an adjudication.[5]" *McKinley v. State Board of Funeral Directors,* 5 Pa. Commonwealth Ct. 42, 45, 288 A. 2d 840 (1972). Nor are we here dealing with the mere promulgation of an administrative regulation or quasi-legislative fact finding of general application to persons throughout the Commonwealth. *Compare Insurance Company of North America v. Commonwealth,* 15 Pa. Commonwealth Ct. 462, 327 A. 2d 411 (1974) ; and *Pittsburgh v. Insurance Commissioner,* 4 Pa. Commonwealth Ct. 262, 286 A. 2d 475 (1971), *rev'd on other grounds,* 448 Pa. 466, 294 A. 2d 892 (1972). Rather, we have here a final determination of an administrative agency applying a challenged internally promulgated policy against individual parties, and the real issue is whether the agency can insulate the basis of its decision from meaningful judicial review

5. Standard Lime and Refractories Company v. Department of Environmental Resources, 2 Pa. Commonwealth Ct. 434, 279 A. 2d 383 (1971). Also, see State Board of Chiropractic Examiners v. Life Fellowship of Penna., 90 Dauph. 44 (1968), rev'd on other grounds, 441 Pa. 293, 272 A. 2d 478 (1971)."

by labelling its actions the product of administrative discretion.

Justice Roberts in *Man O'War Racing Association, Inc. v. State Horse Racing Commission,* 433 Pa. 432, 250 A. 2d 172 (1969), suggests three indicia of administrative decision-making which is judicial in nature and appealable that we find to be germane to the instant appeals. "First, the decision making power of the [agency] and the manner in which it functions indicate judicial characteristics." 433 Pa. at 438, 439, 250 A. 2d at 175. Under Section 905(a) of The Vehicle Code, 75 P.S. §905(a), "The Secretary of Highways of this Commonwealth [now Penndot], and local authorities in their respective jurisdictions, may, *at their discretion,* upon application in writing accompanied by the fee provided in this act, *and good cause being shown therefor,* issue special permits in writing, authorizing the applicant to operate or move . . . (a) a vehicle or a tractor, or combination thereof, of sizes and weights exceeding the maximum specified in this act [maximum width of ninety-six inches under Section 902(a), 75 P.S. §902(a)] . . . ." (Emphasis added.) Implementing this discretion to permit oversize vehicles, Penndot promulgated Regulation 800 in 1970, "to regulate the use of State highways for the purpose of moving thereon mobile homes, construction trailers and oversize and/or over-weight office trailers . . . *in order to preserve the safety of the users of State highways; to facilitate the movement of mobile homes . . . as well as the movement of traffic, generally; and to encourage the economic growth of commerce and industry in the Commonwealth of Pennsylvania* without the necessity of constant supervision of Department employees, police and local officials." Regulation 801 (Emphasis added.) Unlike the ministerial function of issuing occupational certifications where the only determination is whether specific minimum standards have been met, *see Fricchione v. Department of Education,* 4 Pa. Com-

monwealth Ct. 288, 287 A. 2d 442 (1972), the exercise of administrative discretion in the instant cases resembles an adjudicative process as "the [agency] must judge the merits of each applicant in terms of complicated and multi-faceted statutory standards." 433 Pa. at 439, 250 A. 2d at 175.

"Second, the decisions made by the [agency] are so frought with the public interest that an appeal must lie." 433 Pa. at 439, 250 A. 2d at 176. As Regulation 801 indicates, granting or denying a special hauling permit involves the balancing of three distinct factors which potentially affect the public interest and welfare: 1) the preservation of safety on the State highways; 2) the facilitation of the movement of mobile homes without unduly interfering with normal traffic flow; and 3) the encouragement of economic growth in the Commonwealth. Added to these is the obvious impact upon the tax revenues available to the Commonwealth generated by the manufacture and movement of fourteen feet wide mobile homes in the form of application fees, highway taxes, as well as corporate and individual income taxes. There can be no question that many of these interests are conflictory and within the Secretary of Penndot's particular expertise and sound discretion to reconcile. The presence of this expertise and discretionary power, however, does not insulate an agency's ultimate decision from judicial review, but simply limits the scope of a court's review.

"Third, and finally, some courts have considered whether the action 'substantially affects property rights' to determine if the action is judicial." 433 Pa. at 440, 250 A. 2d at 176. As in *Man O'War, supra,* Penndot argues that Appellants can have no "property right" in the issuance of a special hauling permit because Section 902(a) of The Vehicle Code limits vehicular width to ninety-six inches, and exceptions thereto are purely a matter of legislative grace. "However, to take such a

narrow view of the licensing process herein involved not only yields an incongruous result, but also flies in the face of the test: Does the decision 'substantially affect property rights?' Indeed, it must. *That which is being granted is a very valuable privilege even though it calls for a substantial investment."* 433 Pa. at 441, 250 A. 2d at 176 (Emphasis added.) Similarly, Appellants here claim to have expended considerable sums of money in tooling-up and stockpiling parts for a continued production of fourteen feet wide mobile homes. In most cases, applications for a special hauling permit are made after a manufacturer has received a purchase order for a fourteen feet wide unit, and the obvious effect of Penndot's decision to ban the fourteen footers is to prevent completion of these orders. Most importantly, however, we feel is the effect of the settlement of this issue upon Appellants and other domestic manufacturers' capacity to compete successfully with out-of-state manufacturers in the out-of-state market for these units and the obvious effect of this exclusion upon the Pennsylvania economy and consequent revenue to the Commonwealth. These interests are of such great significance that they meet the third criteria of an adjudication as suggested in *Man O'War.*

Reaching the merits, then, we must conclude that the rejection of Appellants' applications cannot be sustained by what is conveniently categorized as a "final directive" which purports to ban the transport of fourteen feet wide mobile homes. However we arrive at our destination by a route which was not charted by Appellants. Appellants argue that the "final directive," admittedly promulgated without the formalities required of a rule or regulation, alters several express provisions of the outstanding regulations of Penndot. Although it is well established that the duly authorized and promulgated regulations of an administrative agency have the force of law and are equally binding on the agency itself as

on others, *Herdelin v. Greenberg,* ... Pa. Commonwealth Ct. ..., 328 A. 2d 552 (1974) ; *Good v. Wohlgemuth,* ... Pa. Commonwealth Ct. ..., 327 A. 2d 397 (1974), we fail to see any inconsistency between the instant "final directive" and the outstanding provisions of Regulation 800. The "final directive" here challenged essentially represents an internal policy codifying the discretion vested in the Secretary of Penndot by Section 905(a) of The Vehicle Code, 75 P.S. §905(a), which has been exercised with respect to mobile homes in excess of twelve feet in width. Regulation 800, in turn, does not specify or otherwise limit the Secretary's discretion as to the *type* of oversize vehicles which will be granted special hauling permits. Rather, once the Secretary's discretion under Section 905(a) has been affirmatively exercised in favor of a particular oversize vehicle or class of vehicles, the regulations establish the application procedures and specific conditions which must be complied with in making the movement. For example, were the Secretary to determine the allowance of fourteen feet wide movements to be in the best interest of the Commonwealth, as he did in the Fall of 1973, movements on State highways would be restricted to Monday through Friday from 9:00 A.M. to 3:30 P.M. [Regulation 810(g)] ; and pilot cars with warning signs would have to precede and follow the oversized unit, depending upon the number of lanes of the highway over which the unit passes [Regulations 810(m) (n)].

As a practical matter, it would be overly burdensome and administratively inefficient to require the Secretary of Penndot to exercise his discretion under Section 905(a) upon each individual application for an oversized special hauling permit. Common sense dictates that the Secretary has the power to adopt a policy, to be uniformly applied by district offices of Penndot in the absence of extraordinary circumstances, which implements the Secretary's discretionary power under Sec-

tion 905 (a) as to a particular class of oversized vehicles. Such necessary administrative latitude, however, does not excuse Penndot from complying with the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, 45 P.S. §1101 et seq. (Supp. 1974-1975), if this internal policy is in the nature and has the effect of a rule or regulation. Given the general applicability and future effect of the instant "final directive," it is clear that it falls within the definition of "regulation" under either Section 102 (12) of the Commonwealth Documents Law, 45 P.S. §1102 (12), or Section 2 (e) of the Administrative Agency Law, 71 P.S. §1710.2 (e), and thus its promulgation must be in accordance with the Commonwealth Documents Law. *See Insurance Company of North America v. Commonwealth, supra; Pittsburgh v. Insurance Commissioner, supra.* Having failed to comply with the Commonwealth Documents Law, the "final directive" issued by Penndot is a nullity and cannot form the basis for the rejection of Appellants' special permit applications. Section 208 of the Commonwealth Documents Law, 45 P.S. §1208 (Supp. 1974-1975). We do not share the fear expressed by Penndot that the requirment of promulgating its policy decisions in accordance with the Commonwealth Documents Law would deprive the Secretary of the flexibility he needs in dealing with emergency situations. Certainly, were a regulation prohibiting the movement on State highways of mobile homes in excess of fourteen feet promulgated, the Secretary would still have the power under Section 905 (a) of The Vehicle Code to permit wider movements in an emergency. Moreover, Regulation 811 contemplates an emergency oversize movement without the requirement of a prior permit so long as the Secretary of Penndot or his local subordinate is notified immediately, and a permit is subsequently issued. There is no serious question but that the Secretary of Penndot could promulgate a valid regulation which would ban the oversize movements which are the

subject of this dispute. But until he does so, the discretion vested in him by Section 905(a) must be exercised on a case by case basis.

Having disposed of the appeals directed on the invalidity of the "final directive," the authority by which Appellants' applications were denied, we need not reach the constitutional questions raised. The procedures herein employed by the Secretary of the Department of Transportation, Commonwealth of Pennsylvania, are accordingly reversed, and the individual applications are remanded to the Secretary with direction to exercise the discretion vested in him under Section 905(a) of The Vehicle Code as to each application and to hold such hearings as are required to make appropriate judgments.