## Doraville Enterprises v. Commonwealth

*Robert Critchfield*, for appellant.
*Eugene E. Dice*, for Commonwealth.

COHEN, *Member*, October 21, 1975—This action is before the board on the appeal of Doraville Enterprises (hereinafter "Doraville") from the action of the Pennsylvania Department of Environmental Resources (hereinafter "DER") of November 28, 1973, in denying Doraville's application for a permit to operate a strip mine in Upper Turkeyfoot Township, Somerset County, Pa. The location of the proposed mining operation is within the Laurel Hill Creek Watershed which DER has designated as a "conservation area." The stated reason for the permit denial was that the proposed operation would take place within a conservation area. The legal sufficiency of this reason for denial is the main issue involved in this matter.

For more than 20 years, DER and its predecessor agencies have refused to issue mine drainage permits in the Laurel Hill Creek Watershed. Because of the energy crisis and the consequent increase in the value of fossil fuels, the large reserve of coal in the Laurel Hill Creek Watershed tend to be viewed by enterprising business persons as an exploitable natural resource that should now be utilized. Conversely, conservation minded groups and individuals, hunters, fishermen, ecologists and others resist the intrusion of mining operations into the area for fear that strip mining will despoil a part of the Commonwealth of superb scenic beauty. Under such circumstances, it is not entirely surprising that DER would seek to preserve the watershed from the effects of strip mining.

The writer of this adjudication held six days of hearings in this matter between October 29, 1974, and March 26, 1975. Thereafter, the parties submitted proposed findings of fact, conclusions of law and briefs in support thereof. The board then or-

dered the parties to submit additional briefs on the question of whether the department may legally deny a strip mining permit application for the reason that it has declared the area in which the proposed mining is to occur to be a "conservation area." The parties submitted briefs on this issue. On the basis of the foregoing, we enter the following

## FINDINGS OF FACT

1. Appellant is Doraville, a partnership engaged in the business of surface mining, located at R.D. 1, Somerset, Somerset County, Pa.

2. Appellee is DER, the department of the Commonwealth of Pennsylvania responsible for the administration and enforcement of The Clean Streams Law of June 22, 1937, P.L. 1987, as amended, 35 P.S. §691.1, et seq.

3. On or about April 3, 1973, Doraville submitted to DER Mine Drainage Application No. 4073SM3 to operate a strip mine of approximately 65.17 acres in Upper Turkeyfoot Township, Somerset County, Pa. The application proposed a treated discharge to an unnamed tributary of Laurel Hill Creek. The proposed mining site is approximately one mile from Laurel Hill Creek. The unnamed tributary of Laurel Hill Creek is a wet weather stream. Such a stream may have either reduced flow or no flow at all in periods of dry weather.

4. DER has designated the Laurel Hill Creek Watershed as a conservation area within the meaning of 25 Pa. Code §93.2.

5. The land on which Doraville proposes to mine is owned by Lloyd Pletcher, Rockwood, R.D. 3, Somerset County. Mr. Pletcher and appellant have entered into a lease whereby appellant will pay Pletcher a fixed royalty on each ton of coal mined.

6. On or about November 28, 1973, DER, after reviewing Doraville's application and making a detailed survey of the area and after considering the comments and recommendations of the Pennsylvania Fish Commission and of the Bureau of Water Quality Management of DER, denied Doraville's mining drainage application as follows:

"Your application for a Mine Drainage Permit has been considered. A permit has been refused because the watershed of Laurel Hill Creek has been declared a conservation area.

"If you desire more specific information on this refusal, please contact this office.

"You may, within fifteen (15) days from the date of receipt of this letter, file an appeal to request a hearing before the Environmental Hearing Board on the attached notice of appeal forms. A copy of Chapter 21 of the Department of Environmental Resources Rules and Regulations, governing practice and procedure before the Board, is attached."

7. For many years, DER and its predecessor agencies adopted a policy of denying mine drainage applications on the Laurel Hill Creek Watershed. This policy was never adopted in the form of a duly promulgated regulation.

8. Doraville's application for a mine drainage permit did not specifically address itself to the water quality criteria applicable to Laurel Hill Creek, nor did DER's review of said application consider whether the proposed treatment would produce an effluent which would conform to the criteria.

9. The water quality criteria applicable to the Laurel Hill Creek Watershed and relevant to the consideration of mine applications are as follows:

(1) the pH of the receiving waters shall be no less than 6.0 nor more than 8.5;

(2) the dissolved oxygen content of the stream shall be not less than 7.0 milligrams per liter; and

(3) the iron content of the stream shall not be greater than 1.5 milligrams per liter.

10. The treated effluent proposed in the application would have a pH value of between 6.0 and 9.0 and a maximum of 7 parts per million of iron.

11. The estimated value of the coal to be mined is $15,000,000.

12. The proposed mining operation would have a duration of approximately three years and would utilize the box cut method of strip mining with continuous backfilling of the previously mined cuts, although the application for the mining permit discloses another method of mining.

## DISCUSSION

The stated reason for the denial of the Doraville application for a mine drainage permit was that the proposed operation in Upper Turkeyfoot Township, Somerset County, Pa., is located within a "conservation area," the Laurel Hill Creek Watershed. The stated reason for the denial is ambiguous. Such ambiguity is revealed by the contentions of the Commonwealth in its post-hearing brief and in its reply brief. On the one hand, the Commonwealth argues on page 12 of its post-hearing brief:

"There is an inherent water pollution potential from any strip mining activity, as testified to by the Department's geologist and aquatic biologists (summarized in the findings of fact section, supra). These factors, coupled with the extensive recreational uses of the watershed, prompted the De-

partment to deny the permit. The stated reason for the denial was that the watershed had been designated a Conservation Area—that is, that the waters were to be kept in a relatively primitive condition. Allowing strip mining in this area, with the quality of the water such a critical factor (N.T. p. 409), is inconsistent with the concept of Conservation Area as defined in the Regulations."

On the other hand, it argues, on page 2 of its reply brief:

"By denying the permit on the grounds that the watershed has been declared a conservation area, the Department was simply stating that, in its opinion, the specific and/or general criteria applicable to protect this use would not be met by drainage from the proposed operation."

It is clear from the evidence that DER produced at the hearings in this matter that its review of appellant's permit application did not concern itself with whether the proposed strip mine operation could be conducted in such a manner as not to endanger Laurel Hill Creek. Its review process never arrived at that point. DER merely ascertained the nature of the streams in the area and concluded that strip mining could not take place within the Laurel Hill Creek Watershed. In its reply brief, on page 3 thereof, the Commonwealth summarizes the testimony of its witnesses as follows:

"The gravamen of the evidence presented by the Department's witnesses was that: (1) the potential for acid and iron bearing discharge was there (as it is for virtually every strip mine operation); (2) the high quality and low buffering capacity of this par-

ticular stream presented a condition of critical sensitivity to the kinds of discharges that could be expected, increasing the likelihood of degradation; and (3) the extensive, *actual* use of the stream as a scenic trout stream lent great significance to any degradation that might result. All this goes to illustrate that the designation 'conservation area' was appropriate and necessary for this watershed, and that the high degree of water quality applicable to this protected use is justified. It also shows something else—it shows what is at stake in the gamble of granting a permit. At best, the Appellant can only show that 'There is reason to expect' the criteria can be met. At the very least, the designation conservation area means that the Department must be more conservative in exercising its judgment as to whether the specific criteria will be met."

Clearly, the Commonwealth is seeking to justify a policy in which it may deny applications for strip mining permits in conservation areas. Otherwise, it would have addressed whatever deficiencies existed in appellant's application in its reasons for the denial of that application. This being the case, we must analyze the pertinent provisions of 25 Pa. Code Chapter 93 to ascertain whether these rules and regulations authorize DER to ban strip mining operations in conservation areas.

An analysis of the pertinent provisions of 25 Pa. Code Chapter 93 clearly demonstrates that the designation "conservation area" has reference to one of the protected interests for which specific water quality standards may be promulated for a particular stream. Thus, 25 Pa. Code §93.2 provides, in relevant part:

"Water uses which shall be protected, and upon which the development of water quality criteria shall be based, are set forth, accompanied by their identifying symbols, in the following Table 1:

". . .

"3.0 Recreation

"3.1 Boating—Power boating, sail boating canoeing and rowing for recreational purposes

"3.2 Fishing—Use of the water for the legal taking of fish

"3.3 Water Contact Sports—Use of the water for swimming and related activities

"3.4 Natural Area—Use of the water as an esthetic setting to recreational pursuits

"3.5 Conservation Area—Waters used within and suitable for the maintenance of an area now or in the future to be kept in a relatively primitive condition."

25 Pa. Code §93.3 provides:

"(a) Those uses followed by an 'X' in the Table in subsection (c) of this section were considered in determining the water quality criteria applicable to the particular waters listed in §93.6 of this Title (relating to designated water uses and water quality criteria) except where otherwise indicated in such section.

"(b) Those uses followed by an 'O' in Table 2 in subsection (c) of this section were considered only where specifically set forth in §93.6 of this Title (relating to designated water uses and water quality criteria).

"(c) The following Table 2 sets forth standard water uses and their symbols:

"TABLE 2

| "Category | Where Considered |
|---|---|
| "1.0 Aquatic Life | |
| "1.1 Cold Water Fish | O |
| "1.2 Warm Water Fish | X |
| "1.3 Migratory Fish | O |
| "1.4 Trout (Stocking Only) | O |
| "2.0 Water Supply | |
| "2.1 Domestic | X |
| "2.2 Industrial | X |
| "2.3 Livestock | X |
| "2.4 Wildlife | X |
| "2.5 Irrigation | X |
| "3.0 Recreation | |
| "3.1 Boating | O |
| "3.2 Fishing | X |
| "3.3 Water Contact Sports | X |
| "3.4 Natural Area | X |
| "3.5 Conservation Area | O |
| "4.0 Other | |
| "4.1 Power | X |
| "4.2 Navigation | O |
| "4.3 Treated Waste Assimilation | X" |

Inasmuch as the designation "conservation area" is followed by an "O," it follows that with respect to particular waters listed in §93.6 of Title 25, there must be a specific indication that category 3.5 "conservation area" applies to the stream in question. Laurel Hill Creek Watershed has specifically been designated as a conservation area by DER.

Under the provisions of 25 Pa. Code §93.5(c), Table 3 is set forth in three columns, column 1 representing an alphabetical symbol, column 2 representing the item and column 3 representing the criteria applicable to the item with letters having subscripts designating the applicable criteria with reference to a particular item. For example,

the symbol "a" represents the item "pH" and the various criteria with regard to pH are designated "$a_1$," "$a_2$," etc. Table 4 of 25 Pa. Code §93.5(d) sets forth groups to which streams of the Commonwealth belong and the various water quality criteria applicable to said stream. These are set forth in columnar fashion with a group of letters with subscripts under each category of stream representing the various water quality criteria applicable to such groups. There are three such groups, group A, group B and group C. The criteria are in the form of requirements with regard to pH, dissolved oxygen, iron, temperature, dissolved solids and bacteria.

Referring to Table 12 of 25 Pa. Code §93.6, we note that under Zone No. 07.108.43.11, Laurel Hill Creek Basin is noted. In the column relating to exceptions to general water use list, with regard to the Laurel Hill Creek, we find the symbols 1.1, 3.1 and 3.5. These symbols indicate that water uses with regard to cold water fish, boating and conservation areas exist in the Laurel Hill Creek Water Basin and should, therefore, be protected, in addition to other categories of water use. With regard to specific criteria, Table 12 indicates that Laurel Hill Creek Basin falls within group A and that with reference to water quality criteria "$b_1$" and "$b_8$," usually part of group A, these specific criteria are deleted. In addition, it is necessary to add to group A specific criteria "$b_6$" and "$v_1$" referring to a dissolved oxygen value of no more than seven milligrams per liter and to ammonia nitrogen of not more than .5 milligrams per liter.

Nothing in 25 Pa. Code Chapter 93 nor any other provisions of any regulation promulgated by the Environmental Quality Board confers upon DER

the authority to ban strip mining activity in conservation areas. That chapter only provides for water quality criteria applicable to waters of the Commonwealth. These regulations afford no public notice of any intent on the part of DER to ban all strip mining in conservation areas. If DER wishes to implement a policy which would ban strip mining in conservation areas, it must first cause to be adopted a regulation by the Environmental Quality Board in a matter consistent with the provisions of the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769 (No. 240), as amended, 45 P.S. §1101, et seq. Failure to reduce such a policy to a duly promulated regulation prevents the policy from being utilized as a proper reason for denying a strip mining permit. Compare Newport Homes et al. v. Kassab et al., 17 Pa. Commonwealth Ct. 317, 332 A. 2d 568 (1975).

While DER predicated its disapproval of appellant's mine drainage application upon an improper basis, it does not follow that appellant is entitled to a permit. There is insufficient evidence before us to make a decision on whether appellant should be granted a permit. Appellant is entitled, however, to have its permit application reviewed by DER on the basis of whether its proposed operation would be consistent with maintaining the quality of the water in Laurel Hill Creek for which the applicable water quality criteria have been designed. We will, therefore, remand this matter to DER to evaluate appellant's application in light of the requirements of Chapter 93 of Title 25 of the Pennsylvania Code. In such review, DER is required to deal with the specifics of the application before it, not on the basis of whether this would open the entire Laurel Hill Creek Watershed to strip mining. In other

words, it must look to the merits of the application before it and determine whether that application will, or will not, discharge an effluent which will result in degradation of the water quality of Laurel Hill Creek in terms of its protected uses designated under 25 Pa. Code §93.6, Table 12, Zone No. 07.108.43.11.

Because the Laurel Hill Watershed has not been opened to mining for many years, the prospect of granting a permit to strip mine in this area has generated myriad letters directed to the board urging it to dismiss appellant's appeal. However well-intentioned these correspondents were, this board can only adjudicate matters before it on the basis of the application of facts adduced at an evidentiary hearing conformable with the requirements of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, as amended, 71 P.S. §1710.1, et seq., in relation to the applicable law under which DER purports to act. For the board to decide important issues brought before it on the basis of the promptings of members of the public would not be consistent with the quasi-judicial nature of the board's functions. It is, in our view, the legislature to whom the public must look to set or change public policy, not this board.

## CONCLUSIONS OF LAW

1. The board has jurisdiction over the parties and the subject matter of this proceeding.

2. A DER policy, not reduced to a duly promulgated regulation, which denies applications for mine drainage permits in conservation areas, as defined in 25 Pa. Code §93.2, is a legally impermissible basis upon which to deny a permit.

3. Where it appears that DER did not evaluate a

mine drainage permit application in terms of whether the proposed method of operation will produce an effluent which will meet applicable water quality standards, the board will remand the matter to DER to make such determination.

### ORDER

And now, October 21, 1975, the appeal of Doraville Enterprises from the action of DER in denying it a mine drainage permit to operate a strip mine in Upper Turkeyfoot Township, Somerset County, Pa., is hereby sustained, and this matter is hereby remanded to DER to review application no. 4073SM3, submitted by Doraville Enterprises, in a manner consistent with this adjudication and shall either grant or deny a permit to Doraville Enterprises on or before December 22, 1975.