Ralph Redmond, on behalf of Franklin County Milk Consumers, Appellant v. Commonwealth of Pennsylvania, Milk Marketing Board, Appellee.

Argued June 9, 1976, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, and Blatt. Judges Kramer and Rogers did not participate.

*Thomas J. Finucane,* for appellants.

*Howard D. Brooks,* Assistant Attorney General, with him *Walter J. Sullivan,* Assistant Attorney General, for appellee.

Opinion by Judge Crumlish, Jr., September 13, 1976:

This is an appeal from Official General Order A-794 of the Pennsylvania Milk Marketing Board (Board) which established prices for the South Central Milk Marketing Area, Area No. 4.

In response to petitions, the Board held public hearings concerning the revision of minimum milk

prices for the South Central Area of Pennsylvania. Pursuant to Section 801 of the Milk Control Law (Milk Law),[1] pre-order conferences were held. At these conferences, Board staff prepared a tentative order, designated A-794, which was introduced along with findings of fact to the Board.

The Board, by a vote of two to one, adopted tentative Order A-794 and posted that order to become effective November 26, 1975.

Ralph Redmond (Appellant) appealed Order A-794 on behalf of himself and certain Franklin County consumers. Appellants were denied leave to proceed *in forma pauperis* and pursuant to Rule 89 of the Court, agreed with Appellee, Board, upon a statement of facts withdrawing seven of the eleven exceptions. Consequently, we have four procedural questions for disposition:

"1. Did the Pennsylvania Milk Marketing Board abuse its discretion in refusing a subpoena requested on behalf of milk consumers?

"2. Does a violation of the 'Sunshine Law' void an action taken by the Pennsylvania Milk Marketing Board?

"3. Does a member of the Pennsylvania Milk Marketing Board, who casts a deciding vote in the matter under appeal, have a conflict of interest such that his vote should be declared unlawful?

"4. Are General Orders of the Pennsylvania Milk Marketing Board required to be filed with the Pennsylvania Legislative Reference Bureau?"

Turning to Appellant's first question, the Board has the power "to issue subpoenae requiring the attendance and testimony of, or the production of pertinent books and papers by, milk dealers or handlers or their employes, producers or their employes, per-

---

[1] Act of April 28, 1937, P.L. 417, *as amended*, 31 P.S. §700j-807.

sons having business dealings with milk dealers or handlers or producers, or other persons whom the Commission believes to have information, books or papers of importance to it in carrying out the purposes and intent of this Act."[2] Mindful, that the function of a *subpoena duces tecum* does not sanction the production of masses of books, papers and records for unbridled scrutiny, the Board did not abuse its discretion in denying the request of Appellant to subpoena a representative cross-section of the Pennsylvania Milk Marketing Area 4 milk dealers.

Second, the "Sunshine Law," Act of July 19, 1974, P.L. 486, 65 P.S. §261 et seq., provides that "[n]o formal action shall be valid unless such formal action is taken during a public meeting."[3] Appellant alleges that since the effect of the non-public meeting on the final outcome is unknown, the action of the Board should be invalid. Not having alleged any further facts to support their contention, we see no merit to this position when extensive hearings are held and the decision of the Board is filed supported by complete findings of fact.

Next is raised the question of conflict of interest involving a member of the Board. In *Milk Control Commission v. Louden Hill Farm,* 87 Dauphin 254 (1967), *aff'd sub nom., Milk Control Commission v. Lily-Penn Food Stores,* 434 Pa. 189, 253 A.2d 630 (1969), while we disagree with the learned judge's distinction between legislative and adjudicatory and will discuss this question *infra,* we conclude, as he did, that there is no conflict of interest which would void the order of the Board.

Our inquiry now turns to whether the Board's determination was an adjudication or regulation. In

---

[2] Section 4 of the Milk Law, 31 P.S. §700j-305.

[3] Section 2 of the "Sunshine Law," 65 P.S. §262.

*Pittsburgh v. Pennsylvania Public Utility Commission,* 182 Pa. Superior Ct. 376, 126 A.2d 777 (1956), the Superior Court unequivocally held the ratemaking function to be an exercise of legislative power. However, in *Man O'War Racing Association, Inc. v. State Horse Racing Commission,* 433 Pa. 432, 250 A.2d 172 (1969), the Supreme Court held that an appeal should be from any action which is adjudicatory in nature and which affects current property rights. The Court reasoned that an applicant for a racing license, if refused, was directly affected in that his ability to earn purses in the Commonwealth had been taken, and that labeling of the determination as other than adjudicatory would not diminish the adjudicatory nature of finally affecting the individual's property right. *Newport Homes, Inc. v. Kassab,* 17 Pa. Commonwealth Ct. 317, 332 A.2d 568 (1975). *See also Pittsburgh v. Insurance Department of Pennsylvania,* 448 Pa. 466, 294 A.2d 892 (1972); and *Pittsburgh v. Blue Cross of Western Pennsylvania,* 4 Pa. Commonwealth Ct. 262, 286 A.2d 475 (1971), *rev'd on other ground, sub nom.,* have extended the sweeping holding of *Man O'War* to the extent that ratemaking determinations of the Commission are no longer subject to the strictures of *Pittsburgh v. Pennsylvania Public Utility Commission, supra.*[4]

---

[4] Reference to *Newport Homes* and *Blue Cross of Western Pennsylvania* as extensions of *Man O'War* presupposes the parallelism in definition of adjudication under the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended,* 71 P.S. §1710.1 et seq., and the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §1101 et seq. Both *Newport Homes* and *Blue Cross* were decided under the Administrative Agency Law which distinguishes between adjudication and regulation. We recognize that the further distinction of regulation as opposed to adjudication merely serves as a further delineation of the distinction between the judicial and legislative function. The analogy for purposes of what is an adjudication under each statute is a strong and persuasive one.

In *Blue Cross*, we held that approval of a rate increase by the Insurance Commissioner for Blue Cross of Western Pennsylvania was adjudicatory and was subject to the Administrative Agency Law. This holding was bottomed upon our perception of the distinction between the regulatory (legislative) function of rate approval and the possible adjudicatory (judicial) effect thereof if the rate proceeding were to be directed to a specific rate increase affecting a specific geographic area. Judge MANDERINO, now Justice MANDERINO, writing for this Court, stated:

"The definition of adjudication is very broad, as is the definition for regulation. If we attempt to find a distinction between them, we must look to the proceeding before the Commissioner in this case. It was not a proceeding to determine a rule or regulation involving rate increases of general application throughout the Commonwealth. It was a proceeding to determine specifically whether an individual non-profit corporation would be entitled in a specific geographic area to a specific rate increase. This has all the earmarks of a judicial function, not a legislative function. Indeed, we might test this by considering whether or not the Legislature itself could by legislative enactment pass legislation specifically referring to Blue Cross of Western Pennsylvania and stating in the legislation that a specific corporation was entitled to charge a specific rate to subscribers. There can be no question that such legislation would be special legislation which is prohibited by the Constitution. See Constitution of Pennsylvania, Art. 3, §32. We do not think that an administrative agency can, under the guise of designating a decision as legislative, do something that the Legislature itself could not do. The Legislature can, of course, through legislative enactment, adopt 'regulations,' which is what the Legislature does all the time except that we call them laws.

The distinguishing characteristics of our law is quite similar to the definition given to regulation in the Administrative Agency Law. It is an enactment of general application, not an enactment of specific application. Even those laws which appear to be enactments of specific application must be laws of specific application to a reasonable class in the society. Only then can legislation applying to a specific class be valid. We note that special legislation in Pennsylvania relating to single particular municipal corporations occurs by specific constitutional provisions. See Constitution of Pennsylvania, Art. 3, §20.

"On the other hand, the judicial function in our government is the function where rights are determined which affect specific persons or specific classes of persons which classes may not be valid classes for legislating but are always valid classes for judicial determinations. Thus a judicial function can be performed as to any individual or any class.

"The definition of adjudication in the Administrative Agency Law speaks of decision making which affects '. . . the parties to the proceeding.' This language is peculiar to judicial proceedings, not legislative proceedings.

"The real difference between the definition of adjudication and the definition of regulation in the Administrative Agency Law will not be found by addressing ourselves to questions of what is affected or how seriously something is affected, but rather by addressing ourselves to 'who' is affected. The definition of adjudication refers to 'parties.' The definition of 'regulation' refers to rules or regulations of 'general application.' " 4 Pa. Commonwealth Ct. at 267-68, 286 A.2d at 477-78.

As we have said before, the approval of the price increase in this case was an approval for the South Central Milk Marketing Area, Area No. 4, a specific

area. We conclude that under *Blue Cross*, the action of the Board was adjudicatory and not regulatory.

In summary, we hold that Official General Order No. A-794 is an adjudication of the Board and as such, does not fall within the purview of the Commonwealth Documents Law.[5]

Accordingly, we

ORDER

AND Now, this 13th day of September, 1976, the Order of the Pennsylvania Milk Marketing Board is affirmed and the appeal dismissed.

---

[5] Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §1101 et seq.