Inmates of the Cumberland County Prison et al., Petitioners v. Department of Justice of Pennsylvania, Bureau of Correction of Pennsylvania, Special Services Division of the Bureau of Correction of Pennsylvania, Respondents. Edward F. Whitmore and David M. Kurtz, Intervening Party Petitioners.

Argued May 12, 1983, before Judges BLATT, MAC-PHAIL and BARBIERI, sitting as a panel of three.

*Samuel W. Milkes,* for petitioners.

*Sherree L. Sturgis,* Chief Counsel, with her *Roy T. Stegena,* for respondents.

OPINION BY JUDGE MACPHAIL, July 21, 1983:

This is a class action, brought in our original jurisdiction, filed by the Inmates (Petitioners) of the Cumberland County Prison (Prison) against the Pennsylvania Bureau of Correction, Special Services Division (Bureau). Before the Court at this time are

cross motions for summary judgment. Prior to discussing the issue now presented for resolution, a brief history of the litigation between these parties is appropriate.

Petitioners filed the present Petition for Review in the nature of a complaint in mandamus in 1980. Petitioners requested that we certify them as a class, that we order the Bureau to classify the Prison regarding eligibility to receive inmates, that we order that the classification of the Prison limit the prisoners accepted to those with maximum terms of less than six month sentences, and that we order the Bureau to take any and all appropriate steps available to it to enforce its minimum requirements upon the Prison. Petitioners have primarily asserted as the source of the right to their requested relief Section 3 of the Act of December 27, 1965 (Act), P.L. 1237, *as amended,* 61 P.S. §460.3. Section 3 provides:

The Department of Justice shall have the power and its duty shall be:

(1) To operate and manage regional correctional facilities;

(2) To provide for the tratment, care, maintenance, employment and rehabilitation of inmates of regional correctional facilities;

(3) To establish standards for county jails and prisons including standards for physical facilities and standards for correctional programs of treatment, education and rehabilitation of inmates; and

(4) To inspect county jails and to classify them in accordance with standards adopted under clause (3) of this section as eligible to receive prisoners sentenced to maximum terms of six months or more but less than five years.

At the time the complaint was filed, the Bureau had adopted minimum standards pursuant to the pro-

594

visions of Section 3(3).[1] The Bureau had also inspected the Prison pursuant to the requirements of Section 3(4). However, the Bureau had not taken any affirmative steps to "classify" the prison.[2]

By order entered July 11, 1980,[3] this Court directed the Bureau to classify the Prison in accordance with the minimum standards. Pursuant to that order, the Bureau on July 25, 1980, certified the Prison as approved to accept prisoners with sentences up to five years less one day. On December 4, 1981, a new certification was issued for the Prison, based upon another inspection, which again approved the Prison to accept prisoners with sentences up to five years less one day. Various prisoners of the Prison filed an appeal to this Court, separate from the present action, from those two determinations. Based upon a review of the records which formed the basis for these determinations, this Court reversed the Bureau's adjudications classifying the Prison and ordered the Bureau to classify the Prison as eligible to receive prisoners sentenced to terms of no longer than six months. *Inmates of the Cumberland County Prison v. Department of Justice,* Pa. Commonwealth Ct. , 454 A.2d 653 (1983) (hereinafter *Inmates Appeal*).[4]

On March 11, 1983, this Court entered an order granting class certification in the present action. On

[1] *See* 37 Pa. Code §§95.221-.248.

[2] The Bureau contended that "classify" meant that unless the Bureau notified a prison to the contrary, the prison was considered classified to receive prisoners sentenced to terms of six months or more.

[3] An opinion in support of that order, per the author of the present opinion, was filed July 17, 1980.

[4] Subsequently, this Court, by order of the present author dated February 16, 1983, entered a stay of the order in *Inmates Appeal* pending appeal. Our Supreme Court has since granted the Bureau's Petition for Allowance of Appeal. 45 E.D. Appeal Docket 1983.

April 15, 1983, this Court approved a stipulation for partial dismissal of the present action, dismissing with prejudice all issues but one.[5] The sole issue now remaining for resolution by way of summary judgment is: should the Bureau be required to promulgate rules and regulations setting forth a system of inspection and classification of county prisons? More precisely, the Petitioners request an order mandating three sets of rules. First of all, Petitioners want the Bureau to promulgate rules regarding hearings under the Administrative Agency Law, 2 Pa. C. S. §501-508. Secondly Petitioners desire regulations which would systematize the inspection process so as to ensure inspection of all the minimum standards. *See* note 1 *supra*. Finally, Petitioners ask that rules be promulgated which would define the level of classification to be given a Prison based on the degree of compliance with the minimum standards.

Petitioners' first request, desiring Bureau promulgation of rules governing adjudicatory procedure, is easily handled. Pursuant to 1 Pa. Code §31.1, the practice and procedure to be used by all agencies of the Commonwealth, absent statute or agency regulations to the contrary, is that provided by 1 Pa. Code §§31.1-35.251. *See Pioneer Finance Co. v. Pennsylvania Securities Commission*, 17 Pa. Commonwealth Ct. 366, 368 n. 4, 332 A.2d 565, 566 n. 4 (1975). Therefore, the regulations defining procedure necessary to provide an adjudication of a Prison's classification need not be promulgated by the Bureau and we shall not so order.

We shall now move on to an analysis of Petitioners' other two requests. Petitioners' requests have some degree of logic and simplicity to them. Where the Bu-

---

[5] The parties stipulated to this dismissal in part due to this Court's decision in *Inmates Appeal.*

596

reau here has, by statutory requirement,[6] promulgated minimum standards regarding the health, safety and welfare of county prison environments, then it would seem that a corresponding system of inspection for, and classification based upon, such standards could be an appropriate subject for further Bureau rule-making. Such a system would certainly make the adjudicatory decision of classification mandated by *Inmates Appeal* much less subject to challenge. *See Newport Homes, Inc. v. Kassab,* 17 Pa. Commonwealth Ct. 317, 328, 332 A.2d 568, 575 (1975) (Absent properly adopted regulations, requests for oversized load permits must be examined on a case by case basis, though ''[t]here is no serious question but that the Secretary of [the Department of Transportation] could promulgate a valid regulation which would ban the oversize movements which are the subject of this dispute.'')[7] In fact, proposed rules were published which would have implemented an inspection/classification system and which would have resulted in a negotiated settlement of the present dispute. Later intransigence by the Bureau, however, foreclosed the adoption of said regulations.

The question before us now, however, is not whether the Bureau would be wise to adopt regulations defining the inspection/classification process, but rather whether the Bureau is *required*, as a matter of law, to adopt such regulations. As we see it, the answer to that question must be no.

---

[6] "[I]ts *duty* shall be: . . . (3) To establish standards for county jails and prisons. . . ." 61 P.S. §460.3(3) (emphasis added).

[7] *See also Einsig v. Pennsylvania Mines Corp.,* Pa. Commonwealth Ct. , 452 A.2d 558, 569 (1982) ("A regulation, on the other hand, once properly promulgated, cannot be collaterally attacked as being inaccurate, or incorrect, if it was adopted following the proper statutory procedures, is within the scope of its enabling legislation, and otherwise passes constitutional muster.")

Initially, we would note that 61 P.S. §460.3, while mandating the establishment of minimum standards, does not mandate either an inspection or classification *system*. This Court has on several occasions refused to order rulemaking due to the absence of any legislative mandates. *See, e.g., Derry Township School District v. State Board of Education,* 65 Pa. Commonwealth Ct. 188, 193, 442 A.2d 32, 34 (1982) ; *Fine v. Department of Education,* 41 Pa. Commonwealth Ct. 283, 285, 398 A.2d 1108, 1110 (1979); *Radnor Township School District v. Betty,* 30 Pa. Commonwealth Ct. 425, 429, 373 A.2d 1361, 1364 (1977).

There still remains the question of whether this Court, under such general concepts as due process or non-delegation theory, should require the adoption of regulations to control the Bureau's decisions regarding the proper classification of county prisons.

As long ago as 1947, the United States Supreme Court was presented with the question of whether an administrative agency, vested with rulemaking power, must proceed by way of rulemaking in defining standards of conduct or whether the agency could act through adjudications. In *SEC v. Chenery Corp.,* 332 U.S. 194, 202-03 (1947), the Court presented this oft-quoted analysis of an agency's prerogatives :

Since the Commission, unlike a court does have the ability to make new law prospectively through the exercise of its rule-making powers, it has less reason to rely upon ad hoc adjudication to formulate new standards of conduct. . . . The function of filling in the interstices of the Act should be performed, as much as possible, through the quasi-legislative promulgation of rules to be applied in the future. But any rigid requirement to that effect would make the administrative process inflexible and incapable of dealing with many of the specialized problems

which arise. . . . Not every principle essential to the effective administration of a statute can or should be cast immediately into the mold of a general rule. . . .

In other words, problems may arise in a case which the administrative agency could not reasonably foresee, problems which must be solved despite the absence of a relevant general rule. Or the agency may not have had sufficient experience with a particular problem to warrant rigidifying its tentative judgment into a hard and fast rule. Or the problem may be so specialized and varying in nature as to be impossible of capture within the boundaries of a general rule. In those situations, the agency must retain power to deal with the problem on a case-to-case basis if the administrative process is to be effective. There is thus a definite place for the case-by-case evolution of statutory standards. And the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily within the informed discretion of the administrative agency.

In more recent years, however, there have been discernable movements by various courts toward requiring the promulgation of regulations which would control administrative discretion. *See, e.g., White v. Roughton,* 530 F.2d 750 (7th Cir. 1976); *Holmes v. New York City Housing Authority,* 398 F.2d 262 (2nd Cir. 1968). One of the most ardent supporters of the concept of required rulemaking is Professor Kenneth Davis, who has given an extensive treatment of the subject in the recent revision of his multi-part treatise on administrative law. *See* 2 K. Davis, Administrative Law Treatise, §§7:24-:29 (2d ed. 1979); 1 K. Davis, Administrative Law Treatise, §§3:9-:15 (2d ed. 1978). However, Petitioners have not directed us

to, nor have we been able to discover, any Pennsylvania court decision which has embraced this new theory of required rulemaking.[8] In fact, a recent decision by our Supreme Court has reaffirmed the principle that an agency may opt to use its adjudicatory powers to establish standards of conduct rather than its rulemaking powers. *Department of Environmental Resources v. Butler County Mushroom Farm,* Pa. , 454 A.2d 1 (1982). Even Professor Davis has recognized the important and unquestioned right of agencies to use adjudications to define the law. *See* 2 Davis, at 118-19.

One of the key matters focused upon in determining whether the judiciary should act to curb excessive administrative discretion through required rulemaking is whether sufficient safeguards exist to protect against arbitrary decisionmaking. As stated by Professor Davis:

> Safeguards are usually more important than standards, although both may be important.

[8] Professor Davis cites to the case of *Pennsylvania State Board of Pharmacy v. Cohen,* 448 Pa. 189, 292 A.2d 277 (1982) as an example of judicially required rulemaking. 1 Davis, at 181-82. With all due respect to Professor Davis, however, we believe he has misread the import of *Cohen.* In *Cohen,* the *Legislature* specifically defined the term "unprofessional conduct" as applied to a pharmacist by the listing of thirteen acts and also gave to the regulatory agency the power to promulgate regulations defining other prohibited acts. Pharmacist Cohen committed certain acts which, while generically unprofessional in nature, were not a violation of any of the thirteen acts or of any other statutory or regulatory provision. Not surprisingly, our Supreme Court detemined that Cohen could not be found to have been in violation of any provisions of the Act in question. The Court did not, however, hold that the term "unprofessional conduct" was so vague as to be unenforceable absent further definition by way of promulgated rules. This is made quite clear by the Supreme Court's later explanation of *Cohen* in *State Dental Council and Examining Board v. Pollock,* 457 Pa. 264, 277-78, 318 A.2d 910, 917-18 (1974). *See also William Penn Parking Garage v. City of Pittsburgh,* 464 Pa. 168, 214-16, 346 A.2d 269, 292-93 (1975).

The criterion for determining the validity of a delegation should be the totality of the protection against arbitrariness, not just the one strand having to do with statutory standards.

For instance, a delegation *without standards* of power to make rules in accordance with proper rulemaking procedure and a delegation *without standards* of power to work out policy through case-to-case adjudication based on trial-type hearings should normally be sustained, whenever the general legislative purpose is discernable. (Emphasis in original.)

1 K. Davis, at 209. Our own Supreme Court has recognized the need to provide safeguards against the arbitrary exercise of discretion, both through the use of adjudicatory procedures and legislatively required rules. *See, William Penn Parking Garage Inc. v. City of Pittsburgh,* 464 Pa. 168, 213, 346 A.2d 269, 291-92 (1975); *Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 12-13, 331 A.2d 198, 203-04 (1975).

Here, the Bureau has promulgated regulations outlining the minimum standards which county prisons are to meet. The classification decision is, under *Inmates Appeal,* to be made through an adjudicatory procedure subject to the requirements of the Administrative Agency Law. Such a procedure will ensure that the Bureau's decision is not whimsical, but rather based on facts of record. Furthermore, the Bureau is required to formulate a reasoned opinion with a statement of the Bureau's findings of fact, 2 Pa. C. S. §507, and the Bureau's decision is subject to further judicial review. While there admittedly is no guarantee that the inspection will in fact check all aspects of the minimum standards, the inspection report is merely one fact among many which can be presented to the Bureau at the administrative hearing and all parties are free to present evidence regarding non-compliance

with certain standards. "These safeguards provide considerable protection against 'the arbitrariness of ad hoc decision making' and injustice on account of unnecessary and uncontrolled discretionary power.' " *William Penn Parking Garage,* 464 Pa. at 213, 346 A.2d at 292 (footnote omitted).

Furthermore, we recognize that the Bureau must have a certain amount of leeway in determining what degree of violation of the minimum standards is deserving of corrective action through lowering of a prison's classification. The minimum standards are excellent goals which should be complied with by all county prisons as rapidly as possible; however, not every shortcoming by a prison need be dealt with through an immediate reduction in classification. Furthermore, the types of non-compliance, both of specific standards and of the total number of standards,[9] would present a near infinite matrix of possibilities, such that no rule could ever hope to predetermine the proper classification. "Because of the uniqueness of this situation, this is precisely the type of matter where case-by-case development of standards through the adjudicative process is most appropriate." *Butler County Mushroom Farm,* Pa. at , 454 A.2d at 8.

Having determined that, as a matter of law, Petitioners are not entitled to their requested relief, we shall grant the Bureau's motion for summary judgment.

### ORDER

The Petitioners' motion for summary judgment is hereby denied. The Bureau's motion for summary judgment is hereby granted.

---

[9] The minimum standards at 37 Pa. Code Chapter 95 contain 28 separate sections and numerous subsections.