645 A.2d 295

**MIDDLE CREEK BIBLE CONFERENCE INC., Robert D. Crowley and Elizabeth L. Crowley, Petitioners,**

**v.**

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 15, 1994.

Decided June 20, 1994.

Reargument Denied July 29, 1994.

James J. Kutz, for petitioners.

Marylou Barton, Asst. Counsel, for respondent.

Before CRAIG, President Judge, and NEWMAN, J., and DELLA PORTA, Senior Judge.

NEWMAN, Judge.

Middle Creek Bible Conference Inc., Robert D. Crowley and Elizabeth L. Crowley (collectively, Middle Creek) appeal

from an order of the Environmental Hearing Board (Board) which dismissed Middle Creek's appeal from the decision of the Department of Environmental Resources (DER), disapproving its planning modules for land development for Middle Creek, dated September 28, 1990 and June 1, 1992. We reverse.

## STATUTORY AND REGULATORY BACKGROUND

The Sewage Facilities Act (Act 537)[1] was enacted by the Commonwealth, "[t]o protect the public health, safety and welfare of its citizens through the development and implementation of plans for the sanitary disposal of sewage waste." 35 P.S. § 750.3(1).

Pursuant to Act 537, each municipality in the Commonwealth must develop and submit to DER "[a]n officially adopted plan for sewage services for the areas within its jurisdiction . . . and from time to time submit revisions to such plans as may be required. . . ." 35 P.S. § 750.5(a). In addition, "[a] municipality may at any time initiate and submit to the department revisions of the said plan." *Id.* An official plan is "[a] comprehensive plan for the provision of adequate sewage systems adopted by a municipality or municipalities . . . and submitted to and approved by the State Department of Environmental Resources. . . ." 35 P.S. § 750.2. The official plan is often referred to as a base plan and is subject to revision. An official plan revision is "[a] change in the municipality's official plan to provide for additional or newly identified or existing sewage facilities needs. . . ." 25 Pa.Code § 71.1.

DER's regulations provide that an application for revision of new land development may be prepared by the proponent of the project. 25 Pa.Code § 71.53(a). The municipality may adopt or refuse the proposed revision. If a municipality adopts the revision, the revision is incorporated into the official plan and is submitted to DER for its review and

1. Act of January 24, 1966, P.L. (1965) 1535, *as amended,* 35 P.S. §§ 750.1–750.20a.

approval or disapproval. 25 Pa.Code § 71.53(i). DER's regulations further provide that it is required to approve or disapprove a plan revision within 120 days of the submission of a completed application. 25 Pa.Code § 71.32(b).

## FACTS AND PROCEDURAL HISTORY

Petitioners Robert and Elizabeth Crowley are the owners of Middle Creek Bible Conference, Inc. Since the mid–1980's, Middle Creek has been involved in the development of a multipurpose conference and retreat center on a 469–acre tract of land in Liberty and Freedom Townships in Adams County. The center is designed to serve a transient population of 1700 persons, with 1200 being provided overnight accommodations and 500 participating in daytime activities. As proposed, the center will require the construction, operation and maintenance of a community sewage treatment facility, which is adequate to treat approximately 74,500 gallons of sewage flow per day.

In 1986, Middle Creek, through its consulting engineers, submitted a request to both Liberty and Freedom Townships that each revise its existing Official Act 537 plan in order to accommodate the intended construction of Middle Creek's private sewage facility. Because the center was to be developed in two townships, DER required submission of approved planning modules from both townships before it could approve the project. In November 1986, Liberty Township amended its Act 537 Plan and voted to approve the planning module as submitted by Middle Creek.

In November 1986, Middle Creek made oral presentations to both the Freedom Township Planning Commission and the Board of Supervisors. Middle Creek made a second presentation in May 1987 after which Middle Creek was requested to provide an alternative feasibility study regarding spray irrigation. In October 1987, Middle Creek provided the Township with reports which evidenced that spray irrigation was not a feasible alternative. On July 13, 1988, the Freedom Township Supervisors held a hearing at which time the public was

invited to express support or opposition to the Middle Creek project. On October 13, 1988 Freedom Township advised Middle Creek that its application was incomplete, although it did not indicate what further information was required. Because Freedom Township failed to act on the planning module, DER disapproved the planning module approved by Liberty Township. DER advised Liberty Township by letter dated May 2, 1988.

Middle Creek filed an appeal with the Board on June 2, 1988, contending that DER was required to compel Freedom Township to take action on its planning modules. Both parties moved for summary judgment, which the Board denied on January 9, 1989. However, on October 11, 1989, the Board granted summary judgment in favor of DER, and determined that Middle Creek was not entitled to deemed approval of its planning module. The Board concluded that because Freedom Township had not yet voted to approve the planning module, and had not yet forwarded it to DER, DER was justified in not approving the Liberty Township revision.

Shortly after Middle Creek filed its appeal with the Board, it filed a mandamus complaint against the Freedom Township Supervisors in the Court of Common Pleas of Adams County. The action sought to compel the Supervisors to act to either approve or disapprove the planning module. Township Supervisors were served with the complaint on June 17, 1988. The Supervisors filed a motion for judgment on the pleadings, which was denied on March 13, 1989.

On September 28, 1988, Middle Creek filed an action for a private request with DER pursuant to 25 Pa.Code § 71.14. This regulation states in relevant part that:

> (a) A person who is a resident or property owner in a municipality may request the department to order the municipality to revise its official plan if the resident or property owner can show that the official plan is ... inadequate to meet the resident's or property owner's sewage disposal needs....

(b) Private requests to revise an official plan shall contain evidence that the municipality has refused in writing to revise its plan . . . or has failed to act within the time limits . . . for plan updates . . . or . . . for new land developments.

In response to Middle Creek's request, DER granted the private enforcement letter on May 10, 1989. The letter informed Freedom Township that it must propose and adopt an adequate Act 537 Plan, which addresses Middle Creek's proposed sewage disposal needs, and the sewage disposal needs of the entire municipality within 120 days of the date of the letter. Subsequently, DER granted Freedom Township several extensions of time. In July 1990, the Supervisors of Freedom Township adopted revisions to the existing Act 537 Plan and approved Middle Creek's planning module which had been pending for approximately four years.

Thereafter, Liberty Township reapproved Middle Creek's planning module application. By early September 1990, DER received the planning module applications as approved by both Townships. By letter dated September 28, 1990, DER returned the planning module applications to both Townships, because they did not comport with certain revisions to DER's regulations, which became effective as of June 10, 1989.

On October 29, 1990, Middle Creek filed an appeal to the Board from DER's September 28, 1990 letter that accompanied the returned planning module applications (the 1990 appeal). On appeal to the Board, Middle Creek contended that existing planning module applications should not be subject to after-the-fact regulatory changes. The 1990 appeal was later consolidated with a second appeal filed in 1992.

In addition to seeking relief from the Board, Middle Creek began negotiations with DER, which resulted in an agreement that Middle Creek would amend the planning modules by supplementing the existing module and that Middle Creek would provide certain additional information that was required by the amended regulations.

In May 1991, the Liberty Township Supervisors approved the amended planning module. The Freedom Township Su-

pervisors approved the amended planning module on June 23, 1991. The modules were received by DER on June 10, 1991 and July 1, 1991, respectively. DER conducted a review pursuant to 25 Pa.Code § 71.54(a) and (b) and advised both Townships that the proposals were still incomplete.

Middle Creek provided additional information to the Townships and in December 1991, the Liberty Township Supervisors again approved the planning module, as did the Freedom Township Supervisors in January 1992. This was the *fourth* approval by Liberty Township and the *third* approval by Freedom Township. However, by letters dated January 29, 1992, DER again returned the modules to each Township, because they did not address the feasibility of spray irrigation and DER had not yet approved the update to the Freedom Township Base Plan. These letters included DER's standard language that if it did not receive the additional information within sixty days from the date of its correspondence, the planning module for the project would not be approved.

On February 2, 1992, DER approved the update to the Freedom Township Base Plan. Thus, the only issue that remained to render the planning module complete was the feasibility of spray irrigation.

On February 4, 1992, Middle Creek, through its representatives, responded to the January 29, 1992 letter of DER and demonstrated that the issue of spray irrigation had previously been addressed. On February 28, 1992, consultants to Middle Creek again provided the Townships and DER with information regarding the feasibility of spray irrigation.

On March 4, 1992, a DER water quality specialist supervisor, Charles Ferree, Jr., sent a letter to the Townships in which he referenced the information DER had received regarding spray irrigation analysis. The letter also stated that the Townships must approve or disapprove the plan and provide a letter regarding the action taken.

On April 7, 1992, the Liberty Township Supervisors held a public meeting at which time they rescinded prior approval of the planning module. On April 9, 1992, the Freedom Town-

ship Supervisors voted to disapprove the planning module. Liberty Township and Freedom Township advised DER of their actions by letters dated April 20, 1992 and May 7, 1992, respectively.

On April 21, 1992, representatives of Middle Creek met with DER Regional Director, Dr. Hugh Archer, Charles Ferree and their counsel. At the meeting, all parties agreed that the intent of Mr. Ferree's letter to the respective Townships dated March 4, 1992, was not to authorize the Townships to review issues and aspects of the planning module which had already been approved. Rather, the intent of Mr. Ferree's letter was simply to have the Townships review the information regarding spray irrigation. A letter to this effect was sent to the Townships by Dr. Archer on May 1, 1992. Neither Township responded to this letter.

On June 11, 1992, DER sent a letter to the Townships acknowledging receipt of the disapproval letters. On July 10, 1992, Middle Creek filed an appeal to the Board of DER's disapproval of the planning modules (the 1992 appeal). At Middle Creek's request, this appeal was consolidated with its 1990 appeal. On March 11, 1993, DER filed a motion to dismiss for lack of jurisdiction. On July 28, 1993, the Board issued an order in which it dismissed the 1992 appeal for lack of jurisdiction and denied the 1990 appeal as moot. Middle Creek then filed a timely appeal with this court.[2]

## ISSUES

On appeal, Middle Creek raises the following two issues: (1) whether DER's continuing conduct between 1988 and 1992, taken as a whole, affected Middle Creek's property rights and immunities so extensively that it constituted "action" sufficient to vest the Board with subject matter jurisdiction over an appeal; and (2) whether DER's conduct was an unconstitu-

2. On April 12, 1994, Middle Creek filed a motion to quash DER's brief and a brief in support thereof. On May 2, 1994, DER filed a motion in opposition to Middle Creek's motion. We conclude that DER's brief conforms to the relevant Rules of Appellate Procedure, and consequently Middle Creek's motion is denied.

tional confiscation of Middle Creek's property without due process of law directly affecting Middle Creek's property rights and privileges.[3]

## WHETHER DER'S CONDUCT CONSTITUTED AN ACTION

■ The Board only has authority to review action taken by DER. *Consumer Investment Fund v. Supervisors of Smithfield Township,* 110 Pa.Commonwealth Ct. 413, 532 A.2d 543 (1987). The term "action" is defined in Section 21.1 of the Environmental Hearing Board's Rules of Practice and Procedures, 25 Pa.Code § 21.1 as:

An order, decree, decision, determination or ruling by the Department affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of a person, including, but not limited to, denials, modifications, suspensions and revocations of permits, licenses and registrations; orders to cease the operation of an establishment or facility; orders to correct conditions endangering waters of the Commonwealth; orders to construct sewers or treatment facilities; orders to abate air pollution; and appeals from and complaints for the assessment of civil penalties.

■ The Board's dismissal of Middle Creek's appeal for lack of jurisdiction was based on its decision in *Lobolito, Inc. v. DER et al.,* (EHB Docket No. 92–147–E, Adjudication issued April 8, 1993). In *Lobolito* the Board determined that the return of a rescinded plan revision to a municipality did not constitute an appealable action. *Lobolito* involved planning modules for a proposed sewage facility involving two municipalities, Lehigh Township and Clifton Township. While both planning modules were being reviewed by DER, Clifton Township rescinded its prior approval and requested that DER return the planning module. DER did so, and also

---

**3.** In reviewing a decision of the Board, this court's scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or necessary findings of fact were unsupported by substantial evidence. *Department of Environmental Resources v. BVER Environmental, Inc.,* 130 Pa.Commonwealth Ct. 344, 568 A.2d 298 (1990).

returned the other planning module to Lehigh Township. Lobolito, the developer of the project that was to be served by the proposed sewage facility, appealed DER's return of the planning modules. The Board determined that where a municipality rescinds its resolution adopting a revision to its sewage facilities plan before DER acts to approve or reject the revisions, and requests DER to return the proposal to the municipality, DER's action of returning the proposal is not an appealable action. Where DER not only returns the withdrawn revision but also returns an interdependent proposed plan revision of an adjacent municipality, DER's return of the second municipality's revision constitutes an appealable action or adjudication by DER. Nevertheless, the Board determined that where the second municipality's plan revision proposed no method for treatment of sewage generated by a subdivision with its borders, the plan revision cannot be implemented. Therefore, any appeal of the denial of the revision is moot since the EHB cannot grant the developer any meaningful relief.

We believe that this case is distinguishable from *Lobolito*, where the Board found that the return of a rescinded plan revision is not an appealable action. In *Lobolito*, Clifton Township approved the proposed revision on November 7, 1991 and filed the revision with DER on November 11, 1991. On February 8, 1992, the Board of Supervisors of Clifton Township rescinded its approval of the proposed revision, and on March 9, 1992 DER returned the rescinded proposed revision to Clifton Township. A mere 123 days elapsed between the approval of the proposed revision by the Township and the return of the proposed revision by DER. This is in marked contrast to the six years which transpired between Middle Creek's original request to Liberty and Freedom Townships in 1986 to revise their base plans and the eventual return of the planning modules in 1992 by DER. We find it unconscionable that a six year delay occurred, after which Middle Creek was no closer to building its project than it was when the entire process began.

Under the facts of this case, the Board erred in determining that DER's letter to the Township Supervisors dated June 11, 1992 was not an appealable action. The letter, which was signed by DER water quality specialist Russell E. Martz, stated:

This letter is being sent to acknowledge the receipt of disapproval letters from Freedom Township, Adams County, dated May 7, 1992 and Liberty Township, Adams County, dated May 7, 1992 for the Middle Creek Bible Conference, Inc. proposal. Please be advised that the Department of Environmental Resources hereby accepts these final actions taken by Freedom Township and Liberty Townships.

We are enclosing a mailer with the developer's copy. This will need to be completed and returned to the Department of Environmental Resources if this proposal is to be pursued.

(RR. 168a).

This letter should not be viewed as an isolated, passive expression of acceptance of the Township's actions. It is the culmination of a series of acts by DER that caused Middle Creek to become entangled in a web of approvals, disapprovals, rescissions and policy changes. Viewed accordingly, DER's letter constitutes an appealable action.

## DEFINITION OF "ACTION" AND "ADJUDICATION"

We also find support for this position in the similarity between the Board's definition of "action" and Section 101 of the Administrative Agency Law, 2 Pa.C.S. § 101, which defines "adjudication" as:

Any final order, decree, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made....

In view of its similarity, to the definition of "action", it is appropriate to rely on interpretations of the term "adjudication" when determining whether DER's letter was an "action."

In *Wortman v. Philadelphia Commission of Human Relations,* 139 Pa.Commonwealth Ct. 616, 591 A.2d 331 (1991), this court held that the respondent's single correspondence constituted an adjudication. In view of the definition of "adjudication," the court determined that "[w]hen an agency's decision or refusal to act leaves a complainant with no other forum in which to assert his or her rights, privileges or immunities, the agency's act is an adjudication." *Id.* at 620, 591 A.2d at 333. The court further noted that a letter from an agency constituted an adjudication if such decision impacts on a person's personal or property rights, privileges, immunities, duties, liabilities or obligations.

As in *Wortman,* DER's letters, which were recurring over several years, had a direct impact on Middle Creek's personal and property rights. Each time that DER refused to review the planning modules approved by the municipalities, and returned them for further review, comment or subsequent vote, DER was setting the groundwork for the 1992 disapprovals by the Townships.

In *Southern Chester County Medical Center v. Department of Health,* 90 Pa.Commonwealth Ct. 284, 494 A.2d 885 (1985), this court held that the Department of Health's determination that a proposed project was not reviewable and did not require a certificate of need was an adjudication. The court found that a letter stating this determination was a final administrative decision affecting the developer who sought to avoid the certificate of need regulations as well as interested parties who might oppose the project. Because the Department's letter in which it refused to review the project was a determination that a government agency need not take action, the aggrieved party was left without a forum in which to litigate the possible erroneous conclusion of the government agency.

In the instant matter, Middle Creek stands in the same position as the interested parties in *Southern Chester County Medical Center,* who had no adequate recourse from a government agency's refusal to act. Unfortunately Middle Creek is

literally in a "Catch–22" situation, and will continue to be, no matter what relief we grant.

In *Newport Homes, Inc. v. Kassab*, 17 Pa.Commonwealth Ct. 317, 332 A.2d 568 (1975), this court held that a PennDOT letter denying a hauling permit was an adjudication. The court stated:

> We have here a final determination of an administrative agency applying a challenged internally promulgated policy against individual parties, and the real issue is whether the agency can insulate the basis of its decision from meaningful judicial review by labeling its actions the product of administrative discretion.

*Id.* at 323, 332 A.2d at 572.

Middle Creek has challenged DER's internally promulgated policy that restricts a property owner's ability to secure approval of a sewage planning module when the property is located in two different municipalities. Middle Creek has also challenged DER's internal policies regarding requirements of planning module applications. The procedural problems caused by the inability of DER and Township personnel to interpret DER regulations, combined with the numerous approvals and remands of the planning module applications, are the kinds of conduct that should not be insulated from judicial review by labeling such actions as the administrative acceptance of the actions of others.

Viewed in its totality, we believe that DER's conduct as alleged in Middle Creek's notice of appeal constitutes an appealable action, which has affected Middle Creek's rights and privileges. Consequently, the Board has subject matter jurisdiction over the instant matter.

## BOARD'S JURISDICTION TO ADDRESS CONSTITUTIONAL ISSUES

In its 1990 and 1992 notices of appeal, Middle Creek raised the issue that DER's rejection of the approved planning modules resulted in a deprivation of its due process rights. In its 1992 notice of appeal, it also challenged DER's sewage

planning module regulations as unconstitutional, DER's conduct as tantamount to a *de facto* confiscation of property without due process, and DER's application of its regulations as a violation of the Commonwealth Documents Law.

■ This court's recent decision in *Beltrami Enterprises v. DER,* 159 Pa.Commonwealth Ct. 72, 632 A.2d 989 (1993), clearly establishes that the Board has exclusive jurisdiction to determine whether or not a taking has occurred where there is a claim that the exercise of police power by DER is an unconstitutional taking of property. Because of our determination that the conduct of DER in the instant case is the basis of an appealable action, it is clear under *Beltrami* that the Board should have reached the merits of both of Middle Creek's appeals.

## CONCLUSION

For the foregoing reasons, we reverse the order of the Board and remand this matter for consideration of the substantive issues raised in the 1990 and 1992 appeals.

## ORDER

AND NOW, this June 20, 1994, the order of the Environmental Hearing Board, Docket No. 92–246–MR (Consolidated), dated July 28, 1993 is reversed and the case is remanded to the Environmental Hearing Board for proceedings consistent with this opinion.

It is further ordered that Petitioners' motion to quash Respondent's brief is denied.

Jurisdiction relinquished.